## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ERIC P. JOECKEL,

      Petitioner,

v.

SAM CLINE,

      Respondent.

Case No. 16-3209-DDC

## MEMORANDUM AND ORDER

This matter comes before the court on Eric P. Joeckel's pro se[1] Petition for Writ of

Habeas Relief (Doc. 1), respondent Sam Cline's Answer and Return (Doc. 10), and petitioner's

Reply (Doc. 12).  Petitioner attacks his state-court conviction on four grounds.  Those grounds

include a claim of ineffective assistance of counsel, two claims of trial court error, and a claim of

prosecutorial misconduct.  For reasons explained below, the court denies Mr. Joeckel's Petition.

### I.    Background

The Kansas Court of Appeals summarized the facts of petitioner's state-court case in this

fashion:

> On November 7, 2009, [petitioner] went to The Flood Zone Bar and Grill (Flood
> Zone) in Osawatomie, Kansas, with a friend.  After [petitioner] and his friend had
> a "couple of drinks," they left the Flood Zone and went to Spring Hill to visit with
> friends.  [Petitioner] and his friend returned to the Flood Zone in the early
> morning hours of November 8, 2009, to pick up [petitioner]'s girlfriend. After
> arriving back at the Flood Zone, [petitioner] met a man, later identified as Nathan
> Lucas, in the Flood Zone parking lot.  [Petitioner] and Lucas had a physical
> altercation which left Lucas injured.   At trial, both men testified and gave
> conflicting testimony about the events that occurred on the morning in question.

---

[1] Because petitioner proceeds pro se, the court construes his filings liberally.  *Erickson v. Pardus*, 551
U.S. 89, 94 (2007) (per curiam); *Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

[Petitioner] testified that he met Lucas for the first time in the Flood Zone parking lot. [Petitioner] asked Lucas if he had a good night. Lucas responded, "No," because his girlfriend was going home with another man. [Petitioner] then told Lucas not to worry about it because "they come a dime a dozen." Lucas responded to [petitioner]'s remark by stating, "Well, fuck that and fuck you, too." [Petitioner] asked Lucas what he meant by his comments. [Petitioner] and Lucas then began to argue until [petitioner] said, "You know what, I ain't going to waste my time on you." When [petitioner] turned to walk away, Lucas punched him in the mouth.

[Petitioner] punched Lucas back, and Lucas fell to the ground. After Lucas fell to the ground, [petitioner] squatted over him. [Petitioner] testified that his "intention was to get—jump on him, you know, like you would in a regular fight, jump on an individual." [Petitioner] testified that he was unable to throw another punch at Lucas because his girlfriend, Melanie Burson, yelled at him to stop and pulled him by his shirt to get him off of Lucas.

On the other hand, Lucas described the events on the morning in question differently. Lucas testified that he went to the Flood Zone with his friend, Charlie Howard. When Lucas and Howard were about to leave, Lucas went outside to smoke a cigarette while Howard attempted to get someone's phone number. Lucas went outside and walked towards Howard's car. As Lucas walked to the car, he passed by [petitioner]. When Lucas had almost reached Howard's car, [petitioner] yelled out "hey" to him. Lucas turned around and walked towards [petitioner] so that he could "see what [petitioner] wanted."

When Lucas reached [petitioner], [petitioner] told Lucas that he had bumped into him. Lucas did not think that he bumped into [petitioner] but stated that "if [he] did bump into him, [he was] sorry." After the apology, Lucas and [petitioner] shook hands. Following the handshake [petitioner] told Lucas that he would "beat [his] ass." The next thing Lucas remembered was that he was lying face down on the ground and being punched in the back of the head. Lucas then testified that Howard came and pulled [petitioner] off of him.

There were several witnesses to [petitioner] and Lucas' altercation. The witnesses' testimony also differs from [petitioner]'s and Lucas' testimony. At trial, Kacy Hayes testified that she saw [petitioner] "walk up behind [Lucas] and punch him in the back of the head." After the punch, Lucas fell to the ground. Once Lucas was on the ground, Hayes testified that [petitioner] stood over Lucas and punched him repeatedly.

Other witnesses corroborated Hayes testimony that [petitioner] stood over Lucas and punched him repeatedly. On the other hand, Burson's testimony corroborated [petitioner]'s version of events. Regardless of whose version of events was more accurate, [petitioner] did not dispute that he punched Lucas in the face at least

once.  Because of the punch, or punches, Lucas went to the emergency room to have his injuries treated.

After Lucas arrived at the hospital, he was examined by an emergency room doctor.  The doctor conducted a CAT scan of Lucas' brain and facial bones.  Based on the results of the CAT scan, the doctor concluded that Lucas had suffered multiple fractures to his face.  Therefore, the doctor referred Lucas to a specialist to have his injuries surgically repaired.

The State charged [petitioner] with one count of aggravated battery.  At trial, [petitioner] admitted to punching Lucas once, but he argued that he punched him in self-defense.  To support his argument, [petitioner] contended that he had suffered injury to his lip from Lucas' punch.  To rebut [petitioner]'s self-defense allegation, the State sought to introduce into evidence booking photographs from the day after [petitioner]'s arrest and booking photographs from a separate arrest a month earlier.  [Petitioner]'s defense counsel objected, arguing that the jury would be able to infer from the booking photographs that [petitioner] was in custody a month before his arrest in this case.  The trial court disagreed and admitted both sets of photographs.

During its closing argument, the State argued that the jury should not believe [petitioner]'s version of events.  The State declared that "[b]y [petitioner]'s own testimony, I clocked him once, my right hand, and the left jaw, he went down, and I started down, and that's when my girlfriend grabbed me.  I think that's probably where the accuracy ends."  Later, the jury found [petitioner] guilty of aggravated battery.

*Kansas v. Joeckel*, 268 P.3d 12, No. 105,117, 2012 WL 307661, at *1–2 (Kan. Ct. App. Jan. 27, 2012) [hereinafter *Joeckel I*].

Petitioner timely appealed his conviction to the Kansas Court of Appeals.  In his direct appeal, petitioner raised four issues:  (1) whether the trial court had erred by sustaining the State's objection to defense counsel's argument that the State had to prove beyond a reasonable doubt that petitioner did not act in self-defense; (2) whether the trial court had erred by admitting petitioner's prior booking photograph; (3) whether the prosecutor had engaged in prosecutorial misconduct by telling the jury he did not believe petitioner's testimony; and (4) whether the cumulative effect of the individual errors substantially prejudiced petitioner and denied him a fair trial.  Br. of Appellant at 1, *Kansas v. Joeckel*, 268 P.3d 12 (Kan. Ct. App. 2012) (No.

105,117) [hereinafter Direct Appeal Brief]; *Joeckel I*, 2012 WL 307661, at *1.  The Kansas

Court of Appeals affirmed his conviction.  *Joeckel I*, 2012 WL 307661, at *1.

Petitioner then sought review on all four of those issues from the Kansas Supreme Court.

Appellant's Pet. for Review at 1 [hereinafter Direct Appeal Pet. for Review].  The Kansas

Supreme Court declined to review the case.  *Joeckel I*, 2012 WL 307661, at *1, *review denied*

(Feb. 4, 2013).

On June 20, 2013, petitioner filed a pro se motion for post-conviction relief under Kan.

Stat. Ann. § 60-1507 ("60-1507 motion").  *Joeckel v. Kansas*, 366 P.3d 667, No. 114,152, 2016

WL 758749, at *1 (Kan. Ct. App. Feb. 26, 2016) [hereinafter *Joeckel II*].  On April 24, 2015,

petitioner filed an amended motion with the assistance of counsel.  *Id.*  In the amended motion,

petitioner raised one issue:  whether petitioner's trial defense counsel was ineffective by failing

to raise objections about the responses of two venirepersons during the motion for new trial.  *Id.*

The Kansas Court of Appeals describes the voir dire responses at issue:

The first colloquy occurred between the State and venireperson L.M.:

Q. [State:] Do you know Kacy Hays?

A. [L.M.:] She used to be an employee of mine.

Q. Where was that at?

A. Miami County Medical Center.

Q. What was your relationship with her, would you say it was good?

A. I was her boss.

Q. Would you say you had a good relationship?

A. Pretty much so.

Q. When she left, did she leave on good terms?

A. Yes.

Q. Have any reason to give any more or less weight to her testimony than anyone else's?

A. No.

Q. Anything about knowing her think would prevent you from being a fair and impartial juror?

A. No.

The second exchange occurred between the State and venireperson B.C.:

Q. [State:] [B.C.], I understand that Miss Hays is your granddaughter.

A. [B.C.:] Yeah.

Q. I assume you're probably going to give her a lot of weight and credibility when she testifies because she's your granddaughter; correct?

A. Depends on what she testifies about.

Q. But as a general rule, you believe her to be—

A. I believe her to be truthful, yes.

Q. And I guess our concern is, is that going to tend to make you lean one way or another if she testifies?  In other words, do you think you can still be fair and impartial if she testifies?

A. Well, I would try to be.  But like I said, I don't know what she's going to say.

Q. But you don't think merely the fact that she's your granddaughter is going to make you vote or render a verdict in favor of the side that she's testifying for?

A. Well, I'd hope it wouldn't, but I don't know.

Notably, L.M. and B.C. were not impaneled on the jury that ultimately convicted [petitioner].  Upon his conviction, [petitioner]'s trial attorney filed a motion for new trial.  This motion did not raise the issue of the responses made by the two venirepersons during voir dire.

*Joeckel II*, 2016 WL 758749, at *2.

5

On June 25, 2015, the Miami County, Kansas District Court held a hearing on petitioner's motion under § 60-1507 ("60-1507 hearing") and then it denied petitioner's request for relief. *Id.* Petitioner appealed this decision ("60-1507 appeal"). In the 60-1507 appeal, petitioner's counsel raised the same issue. Br. of Appellant at 3, *Joeckel v. Kansas*, 366 P.3d 667 (Kan. Ct. App. 2016) (No. 114,152) [hereinafter 60-1507 Appeal]. The Court of Appeals affirmed the district court's judgment. *Joeckel II*, 2016 WL 758749, at *1. Due to a self-proclaimed error, petitioner's counsel miscalculated the deadline to submit the Petition for Review to the Kansas Supreme Court. And he filed it two days out of time. Consequently, the Kansas Supreme Court denied the petition for jurisdictional reasons under its Rule 8.03(a). *See* Kan. Sup. Ct. Rule 8.03(a) ("The 30-day period for filing a petition for review is jurisdictional.").

Petitioner then came to our court, filing his Petition for Writ of Habeas Corpus. Doc. 1. The Petition asserts four grounds for relief. The court reproduces all his claims here, albeit in slightly abbreviated form:

1. Ineffective assistance of counsel based on petitioner's trial defense counsel's failure to request a curative instruction or strike the venireperson when two venirepersons "endorsed" the State's "key witness." *Id.* at 5.

2. Trial court error for sustaining the State's objection to petitioner's trial defense counsel's statement that the State had to prove that self-defense was not present beyond a reasonable doubt. *Id.* at 6.

3. Trial court error for admitting petitioner's prior booking photograph. *Id.* at 8.

4. Prosecutorial misconduct for telling the jury he did not believe the petitioner's testimony. *Id.* at 9.

The court considers these claims under the governing standard detailed in the following section.

## II.     Habeas Corpus Governing Standards

A federal court reviews a state prisoner's challenge to matters decided in state-court proceedings under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Act "requires federal courts to give significant deference to state court decisions" on the merits. *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013) (citing *Hooks v. Workman*, 689 F.3d 1148, 1162–63 (10th Cir. 2012)). A federal court may not grant a state prisoner habeas relief on "any claim that was adjudicated on the merits in [s]tate court proceedings" unless the prisoner can show that the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "Clearly established law" means the Supreme Court's holdings, but not its dicta. *Lockett*, 711 F.3d at 1231. A state-court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing § 2254(e)(1)). And, "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless [it is] objectively unreasonable in light of the evidence presented in the state-court proceeding." *Id.* (citing § 2254(d)(2)).

## III.     Analysis

Respondent asks the court to dismiss the Petition and asserts a variety of reasons to dismiss the individual grounds. The court discusses these reasons in the three sections, below.

### A.     Ground One:  Ineffective Assistance of Counsel

Respondent contends that the court should dismiss petitioner's first ground—ineffective assistance of counsel—for two reasons:  (1) petitioner has not exhausted his state-court remedies; and (2) it is subject to an anticipatory procedural bar.

The court addresses exhaustion first.  "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also* 28 U.S.C. § 2254 (b)(1)(A).  To exhaust his state-court remedies, petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.  As it applies here, the exhaustion prerequisite required petitioner to give the Kansas District Court, Court of Appeals, and Supreme Court an opportunity to hear his claims before seeking habeas relief from a federal court.

Petitioner first raised the ineffective assistance of counsel claim in his 60-1507 motion. When the district court denied his motion, he appealed to the Kansas Court of Appeals.  But, when the Court of Appeals affirmed the district court's decision, petitioner failed to file a timely Petition for Review with the Kansas Supreme Court.  Petitioner's counsel miscalculated the deadline to submit the petition and filed it two days out of time.  Accordingly, the Kansas Supreme Court denied the petition for jurisdictional reasons.   Because petitioner failed to submit a timely petition, he did not invoke "one complete round" of Kansas's appellate review. *See O'Sullivan*, 526 U.S. at 845; *see also Castille v. Peoples*, 489 U.S. 346, 351 (1989) (holding that a claim is unexhausted when it "has been presented for the first and only time in a procedural context in which its merits [were] not [] considered.").  Petitioner thus has failed to exhaust his state-court remedies for his ineffective assistance of counsel claim.

Even if petitioner had exhausted his state-court remedies, he has failed to exhaust them properly.  After courts consider exhaustion, they then ask whether the petitioner "has *properly* exhausted" his state-court remedies.  *O'Sullivan*, 526 U.S. at 848 (emphasis in original).  To exhaust remedies properly, the petitioner must "fairly present" the claims to the state courts.  *Id.* Fair presentation means the petitioner presented the state courts with the same claim—based on the same factual allegations and legal issues—he presents to the federal courts.  *Picard v. Connor*, 404 U.S. 270, 276 (1971).  This requires more than a "somewhat similar" claim.  *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006).

Here, petitioner merely asserts a "somewhat similar" claim.  Although petitioner asserts ineffective assistance of counsel for actions by his trial defense counsel concerning the two venirepersons "endorsing" a State's witness, the alleged ineffective actions here differ from those alleged in petitioner's 16-1507 motion.  Here, petitioner alleges that his trial defense counsel was ineffective because he failed to request a curative jury instruction or ask to strike B.C. when he became aware that B.C. was the grandfather of the witness.  Doc. 1 at 5.  But in his 16-1507 motion, petitioner asserted his defense counsel was ineffective because he failed to raise the issue of the two venirepersons in his motion for new trial.  In his 16-1507 motion, petitioner specifically distinguished between his defense counsel's failure to raise the issue in the new trial motion and the request for a curative instruction.  *See* 60-1507 Appeal at 11 ("Kacy Hays['] testimony was therefore pivotal to the finding of guilt by the jury, and failure to raise the issue in a Motion for New Trial, unlike choosing to request or not request a curative instruction could not be called tactical.").  Now, he claims his counsel's failure to request a curative instruction led to ineffective assistance of counsel.

The underlying claim and facts are the same, but petitioner asserts different reasons for his defense counsel's ineffectiveness.  The reason for his defense counsel's alleged ineffectiveness is the gravamen of this type of claim.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  This requires defendant to show *how* his counsel was ineffective.  *See Howell v. Giles*, No. 1:12CV1041-WHA, 2016 WL 1243252, at *8 (M.D. Ala. Mar. 4, 2016), *report and recommendation adopted*, No. 1:12-CV-1041-WHA, 2016 WL 1237172 (M.D. Ala. Mar. 29, 2016), *judgment entered*, No. 1:12-CV-1041-WHA, 2016 WL 1228852 (M.D. Ala. Mar. 29, 2016) (finding petitioner failed to "identify what counsel should have done differently or explain how the outcome of [petitioner]'s proceedings might have been different if counsel had performed differently.").  So, if the reason asserted in federal court for defense counsel's alleged ineffectiveness differs from the claim presented in state court, then petitioner has failed to present the same claim.  Petitioner thus has failed to exhaust his state-court remedies properly.

Finally, Kansas law bars petitioner's new theory for ineffective assistance of counsel.[2] "[W]hen an appellant has had an opportunity to litigate the effectiveness of trial counsel, any particular claims of ineffective assistance of trial counsel not raised then are deemed waived." *Brown v. State*, 345 P.3d 295, 2015 WL 1402855, at *9 (Kan. Ct. App. Mar. 20, 2015).  In other words, if petitioner sought relief under Kansas law for ineffective assistance of counsel based on the reason he now asserts—failure to request a curative jury instruction or ask to strike venireperson B.C.—Kansas law would bar his claim because he already has litigated an ineffective assistance of counsel claim based on another theory, *i.e.*, failure to raise the issue of

---

[2]    The Kansas Supreme Court already has barred petitioner's original ineffective assistance of counsel claim as untimely.

the two venirepersons in the motion for new trial.  This state law bar creates "a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims."  *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).  This "'[a]nticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it."  *Moore v. Schoeman*, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002).

Here, Kansas law would bar petitioner from asserting another ineffective assistance of counsel claim and so, the court finds that an anticipatory procedural bar precludes plaintiff's claim in this court.

There are two circumstances where a federal court nonetheless may consider claims that are subject to an anticipatory procedural bar:  "(1) if the prisoner has alleged sufficient 'cause' for failing to raise the claim and resulting 'prejudice' or (2) if denying review would result in a fundamental miscarriage of justice because the petitioner has made a 'credible' showing of actual innocence."  *Frost*, 749 F.3d at 1231 (citations omitted).  Petitioner only alleges the first circumstance—albeit impliedly—so the court only addresses that circumstance.

The court must construe a pro se petitioner's filings liberally.  *See Erickson*, 551 U.S. at 94.  Here, petitioner submits his counsel's letter to the Kansas Disciplinary Administrator, presumably to explain why he didn't raise his ineffective assistance of counsel claim in state court.  *See* Doc. 12 at 7–8.  In the letter that petitioner relies on, his counsel describes how he miscalculated the deadline for the Petition for Review to the Kansas Supreme Court.

Counsel's miscalculation is not sufficient cause to overcome the anticipatory procedural bar.  In *Ray v. Simmons*, the Tenth Circuit affirmed a district court's decision that petitioner had

failed to show cause warranting an exception to the anticipatory procedural bar doctrine. 125 F. App'x 943, 946 (10th Cir. 2005). In that case, petitioner argued that sufficient cause existed because his attorney provided ineffective assistance during the state post-conviction relief appeal. *Id.* The court determined that counsel's ineffectiveness could constitute cause only if it independently amounted to a constitutional violation. *Id.* (citing *Coleman*, 501 U.S. at 755). But petitioner had no constitutional right to counsel in an appeal from the state court's judgment in a post-conviction relief proceeding. *Id.* (citing *Coleman*, 501 U.S. at 757). So petitioner failed to establish cause for the procedural default. *Id.*

Likewise, petitioner here tries to show sufficient cause exists because his attorney provided ineffective assistance in his 60-1507 appeal—a Kansas post-conviction relief proceeding. But only independent constitutional violations can provide requisite cause and petitioner had no constitutional right to counsel during that appeal process. *See id.* So, like *Ray*'s petitioner, petitioner here has failed to establish adequate cause to excuse the procedural default.

In sum, the court dismisses petitioner's first ground for relief because he has failed to exhaust it—properly or otherwise—and it is subject to an anticipatory procedural bar.

### B.    Grounds Two and Three:  Trial Court Error

Respondent next argues that petitioner's claims of trial court error in Grounds Two and Three raise nonjusticiable, state law issues. The Supreme Court has held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (first citing 28 U.S.C. § 2241; then citing *Rose v. Hodges*, 423 U.S.

19, 21 (1975)). Particularly, "a state court's misapplication of its own evidentiary rules . . . is insufficient to grant habeas relief." *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) (citing *Estelle*, 502 U.S. at 72).

Here, Grounds Two and Three fail to raise any federal issue. Petitioner has described the alleged errors in this fashion:

> Ground Two:  The [trial] court erred in sustaining the state[']s objection to defense counsel[']s proper statement of law required to disprove self-defense. Supporting facts:  During closing argument defense counsel review[ed] jury instruction #11 regarding the burden of proof and stated that the State must disprove [beyond] reasonable doubt my client did not act in self-defense and we are [asserting] that this was an act of self-defense.  The State objected it was improper statement of law, court sustained without comment.
>
> . . .
>
> Ground Three:  The [trial] court erred in admitting a prior booking photo. Supporting Facts:  During cross exam by State of a defense witness State posed a question that elicited a response that a swollen lip would possibly show up on a photo.  The State posed the question to open the door to present inadmissible evidence pinpointed in motion [in] Limine prior to trial.

Doc. 1 at 6, 8. These grounds merely assert evidentiary rulings that were improper under state law.

Petitioner may secure habeas relief for an improper ruling under a state's rules of evidence only "if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Bullock*, 297 F.3d at 1055 (internal quotation marks, citations, and brackets omitted).  "The Supreme Court has defined 'the category of infractions that violate fundamental fairness very narrowly.'" *Id.* (quoting *Estelle*, 502 U.S. at 73).  "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).

The court now examines the errors asserted in petitioner's Grounds Two and Three to determine whether they deprived fundamental fairness.

### 1.    Sustained Objection to Defense Counsel's Closing Remark about Self-Defense

Ground Two alleges that the trial court erred by sustaining the government's objection to defense counsel's closing remark about the government's burden of proof on self-defense. The closing argument and objection proceeded in this fashion:

> [DEFENSE COUNSEL]:  . . . The other thing that I want you to be sure that you pay careful attention to is Instruction No. 11.  Instruction No. 11 indicates that "The defendant raises self-defense as a defense.  Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty.  The State's burden of proof does not shift to the defendant."
>
> Now, what does that mean?  That means that it's not our responsibility to prove to you beyond a reasonable doubt that this was done in self-defense.  That burden remains on the State.  We are asserting that it is self-defense, and that's why he laid out that punch that caused the injuries to Nathen Lucas.
>
> **The State has to prove to you beyond a reasonable doubt that this was not an act of self-defense.**  And I think that with all of the circumstances and all of the evidence and all of the discrepancies—
>
> [THE STATE]:  Your Honor, I object.  I don't think that's an accurate statement of the law.  I need to prove the four elements of the crime beyond a reasonable doubt.
>
> [THE COURT]:  Sustained.

*Joeckel I*, 2012 WL 307661, at *3 (brackets in original) (emphasis added); *see also* Case No. 09-CR-212 file:  Trial Tr. Vol. III, 713–14.

The court's ruling on this objection was not fundamentally unfair.  Indeed, it was correct. The prosecutor did not have to prove beyond a reasonable doubt that petitioner did not act in self-defense.  *Joeckel I*, 2012 WL 307661, at *5 ("Proof of the nonexistence of all affirmative defenses has never been constitutionally required." (citing *Patterson v. New York*, 432 U.S. 197,

210 (1977)); *see also Smith v. United States*, 568 U.S. 106, 110 (2013) ("Where [an affirmative defense] excuses conduct that would otherwise be punishable, but does not controvert any of the elements of the offense itself, the Government has no constitutional duty to overcome the defense beyond a reasonable doubt." (internal quotation marks, citation, and correction omitted)). Defense counsel misstated the law. So the trial court properly sustained the objection.

Also, the law presumes the jury followed its instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."); *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1250 (10th Cir. 2013) ("[T]he district court cured any possible error by properly instructing the jury"). The court properly instructed the jury on the elements of the charge and self-defense. *Joeckel I*, 2012 WL 307661, at *6. And so neither the defense counsel's improper argument nor the court's ruling rejecting it deprived petitioner of fundamental fairness.

For all these reasons, petitioner fails to demonstrate that the trial court's ruling was fundamentally unfair—*i.e.*, denied petitioner a fair opportunity to defend against the State's accusations.

## 2.     Admission of Booking Photograph

In Ground Three, petitioner asserts that the trial court erred by admitting his booking photograph of petitioner taken after another arrest about a month before his arrest for aggravated battery.

The trial court's ruling unfolded like this:

[THE STATE]: Judge, these two are pictures of [petitioner] taken immediately after the interview with [the police officer] and his arrest. In order to get these in, I'm going to have to bring the jailer that took the pictures over and testify that these were taken at the jail.

Also, these are pictures of [petitioner] taken, approximately, a month earlier, showing the condition of his lip at that time. In order to get these in, I'm going to have to bring a jailer over and say he was in jail on that date, that's why these pictures were taken.

I would like to give [defense counsel] the opportunity just to stipulate that these pictures were taken on that date, no mention of why we have them. There's no risks for the jury finding out, you know, having jailers come up and testify.

[DEFENSE COUNSEL]:  Number one, how are we going to explain that these got—these two similar pictures. One taken the day of the incident. One taken a month earlier. I mean, it doesn't take much of an inference where these pictures come from. The jury knows he was arrested the day of November 9th. So if we say, oh, here is a picture of him a month earlier, it doesn't take anything to conclude that he's there for being arrested, even if I'm stipulating to it.

Second of all, his testimony is the swelling of his lip was anywhere from an eighth to a sixteenth of an inch. That is so slight. How in the world would this even show up on this photograph.

[DEFENSE COUNSEL]:  The other bouncer said it was an obvious fat lip.

[THE COURT]:  Mr. Gettino's testimony was that it was obvious, and Mr. Johnson asked him on cross-examination would it show in a photo and Mr. Gettino said yes. I'm going to allow it.

…

[DEFENSE COUNSEL]:  They are going to know that he was in custody.

[THE STATE]:  Counsel, your client—you and your client put this in issue, this fat lip. That's part of the defense, that he was struck first. I think the State has a right to rebut the defendant had injuries. You made that a constant issue to the trial that nobody checked him for injuries, and I think the State has a right to rebut that.

…

[DEFENSE COUNSEL]:  May I see it. So you're not going to put—if I stipulate, you won't put on any witnesses.  You're simply going to mark these as Defendant's whatever, J and K; we're agreeing that these are taken on such and such a date.

[THE STATE]:  Correct.

[DEFENSE COUNSEL]:  That's it.

16

[THE STATE]:  I won't say anything about where we got them.  I'll just admit them into evidence, saying these are of the defendant.

[DEFENSE COUNSEL]:  Just for the record, I am still continuing the objection.  I am agreeing to this particular stipulation rather than put jailers on to lay a foundation that these were taken at the jail.

Case No. 09-CR-212 file:  Trial Tr. Vol. III, 632–36.  After the court ruled the photographs were admissible, the State admitted them into evidence and published them to the jury.  Now, petitioner complains about the ruling admitting the photograph from his earlier DUI arrest.

Like Ground Two, this ground of alleged error merely asserts improper evidentiary rulings under state law.  This argument requires the court to analyze the ruling for gross prejudice that "fatally infected the trial and denied the fundamental fairness that is the essence of due process."  *See Bullock*, 297 F.3d at 1055.  For three reasons, the court concludes that petitioner was not grossly prejudiced, *see id.*, and not denied "a fair opportunity to defend against the State's accusations."  *Chambers*, 410 U.S. at 294.

*First*, petitioner put his appearance at issue in his trial—as the trial court noted when ruling.  Petitioner claimed he acted in self-defense and one of the defense witnesses testified that he saw petitioner with a fat lip.  And petitioner himself stated he had some swelling.  Petitioner now argues the State "open[ed] the door for it[]self" to admit this set of photographs.  Doc. 12 at 4.  The court disagrees.  By asserting self-defense and testifying about swelling, petitioner was defending against the State's accusations.  The prosecutor was entitled to rebut those assertions by admitting evidence of petitioner's appearance—specifically, his lip.

*Second*, the trial court admitted the photographs after defense counsel stipulated to their authenticity and when they were taken to prevent a jailer from having to provide that foundation.  This procedure minimized the prejudice to petitioner.  Indeed, the jury was informed only when

the photographs were taken.  The court is mindful that the jury might have drawn an improper

inference from seeing two booking photographs.  But the prejudice from this inference is slight

compared to a jailer testifying about when and why they were taken.  *See Bullock*, 297 F.3d at

1055 (reasoning that defense counsel's actions minimized an unfairness and thus contradicted

claim of fundamentally unfair trial).  And all this evidence resulted from an issue that petitioner

chose to put in issue.

   *Third*, the prosecutor did not emphasize the photographs in closing argument.  He

mentioned them once—"Look at the medical records, look at the photographs."  Case No. 09-

CR-212 file:  Trial Tr. Vol. III, 692.  The trial transcript suggests that the prosecutor took steps to

minimize any prejudice to petitioner while still rebutting his claim of self-defense.

   The photographs were probative to the issue whether petitioner was the aggressor or

acted in self-defense.  When photographs have probative value, the Tenth Circuit has held that

their admission is not so unduly prejudicial to render the proceedings fundamentally unfair.  *See*

*Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) (holding admission of photographs

of the victim's charred corpse was not "so unduly prejudicial as to render the proceedings against

petitioner fundamentally unfair" "[g]iven the probative nature of the photographs, the gruesome

character of the crime itself, and the wealth of additional evidence supporting defendant's

convictions.").  So admitting the DUI booking photographs here was not so prejudicial that it

fatally infected the trial, and thus it did not deny petitioner a fair opportunity to defend against

the State's accusations.

   For these reasons, the court dismisses petitioner's second and third grounds for relief.

### C.      Ground Four:  Prosecutorial Misconduct

Petitioner's last ground for relief is prosecutorial misconduct during closing argument. Petitioner properly has exhausted this challenge during his direct appeal.  The Supreme Court has applied the "fundamental fairness" standard to claims of prosecutorial misconduct based on conduct during closing argument.  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" (citation omitted)).

Here, petitioner complains that the prosecutor committed misconduct when he "[told] the jury he did not believe [petitioner's] testimony" about dropping to the ground and punching the victim.  Doc. 12 at 3.

> In the relevant portion of the closing, the prosecutor argued:
>
> By [petitioner's] own testimony, I clocked him once, my right hand, and the left jaw, he went down, and I started down, and that's when my girlfriend grabbed me.  **I think that's probably where the accuracy ends.**
>
> I think [petitioner] did go down and started throwing those wild punches, like you see in the cage fights.  Remember, his first punch, he threw up his right hand, caught Mr.—caught the victim in his left jaw.  He said, "down here," and he clocked him, I think were the words he used.  But the left jaw—sorry.  But his injuries are not on the left jaw.  His injuries are up here on the right jaw.  So, [petitioner's] own story does not match the physical evidence.
>
> The physical evidence is that the victim was pounded on his left side, don't know how many hits.  But if you can look at it, you can use your common sense, look how swollen that jaw was up and down.  It was swollen clear down here (indicating).

Case No. 09-CR-212 file:  Trial Tr. Vol. III, 719–20 (emphasis added).

In *Darden*, the Supreme Court recognized, it "is not enough that prosecutor's remarks were undesirable or even universally condemned."  477 U.S. at 181.  The Court noted that the

prosecutor had made "several offensive comments" during closing argument.[3]  Still, that was not

enough.  Instead, the Court ruled, the comments had to "'so infect[] the trial with unfairness as to

make the resulting conviction a denial of due process.'"  *Id.* (quoting *Donnelly v.

DeChristoforo*, 416 U.S. 637, 643 (1974)).  And the Court found that the prosecutor's comments

did not infect the trial with unfairness.  The Supreme Court approvingly cited the reasoning of

the federal district court—specifically that the prosecutor's argument "did not manipulate or

misstate the evidence."  *Id.*  The Tenth Circuit has explained that *Darden* considered "the trial

court's instructions, the weight of the evidence, whether the comments were in response to

defense counsel's arguments, whether the comments misstated the evidence or implicated a

specific constitutional right, and whether defense counsel had an adequate opportunity to rebut

the comments."  *Black v. Workman*, 682 F.3d 880, 907 (10th Cir. 2012).  When considering

these factors, "[t]he ultimate question is whether the jury was able to fairly judge the evidence in

light of the prosecutors' conduct."  *Bland*, 459 F.3d at 1024.

In petitioner's post-conviction proceedings before the state court, the Kansas Court of

Appeals used a two-step analysis that included plain error.  *See Joeckel*, 2012 WL 307661, at

*10 ("Appellate review of an allegation of prosecutorial misconduct involving improper

---

[3]    The prosecutor's arguments included these statements:

"[The defendant] shouldn't be out of his cell unless he has a leash on him and a prison guard
at the other end of that leash."  [Tr.] at 16.  "I wish [the store owner] had had a shotgun in his
hand when he walked in the back door and blown [defendant's] face off.  I wish that I could
see [defendant] sitting here with no face, blown away by a shotgun."  *Id.*, at 20.  "I wish
someone had walked in the back door and blown [defendant's] head off at that
point."  *Ibid.*  "He fired in the boy's back, number five, saving one.  Didn't get a chance to
use it.  I wish [defendant] had used it on himself."  *Id.*, at 28.  "I wish he had been killed in
the accident, but he wasn't.  Again, we are unlucky that time."  *Id.*, at 29.  "[D]on't forget
what [defendant] has done according to those witnesses, to make every attempt to change his
appearance from September the 8th, 1973.  The hair, the goatee, even the moustache and the
weight.  The only thing he hasn't done that I know of is cut his throat."  *Id.*, at 31.

*Darden*, 477 U.S. at 181 n.12.

comments to the jury requires a two-step analysis.  First, an appellate court determines whether

the comments were outside the wide latitude that the prosecutor is allowed in discussing the

evidence.  Second, if misconduct is found, an appellate court must determine whether the

improper comments constitute plain error; that is, whether the statements prejudiced the jury

against the defendant and denied the defendant a fair trial.  'The facts of each case must be

scrutinized in determining whether a prosecutor's remarks deny the defendant a fair trial.'" (first

citing *State v. McCaslin*, 245 P.3d 1030, 1043 (Kan. 2011); then quoting *State v. Graham*, 83

P.3d 143, 147 (Kan. 2004))).  The Tenth Circuit has found no practical distinction between the

formulations of plain error . . . and the federal due-process test, which requires reversal when

error "so infused the trial with unfairness as to deny due process of law." *Thornburg v. Mullin*,

422 F.3d 1113, 1125 (10th Cir. 2005) (internal quotation marks and citations omitted).  Because

the plain error standard uses "the same test [federal courts] apply to determine whether there has

been a due-process violation," the court must "defer to its ruling unless it 'unreasonably

appli[ed]' that test." *Id.* (quoting 28 U.S.C. § 2254(d))

Applying the *Darden* factors here, the court concludes the prosecutor's comments did not

infect the trial with unfairness and thus did not deny petitioner due process.  The prosecutor's

comments were not offensive—whether one judges the prosecutor's comments by the comments

in *Darden* or otherwise.  In one sentence, he stated simply that he did not believe petitioner's

recitation of the facts:  "I think that's probably where the accuracy ends."  And then, he pointed

out the inconsistences in petitioner's testimony and none of them misstated the evidence.

Indeed, all of the prosecutor's argument was made in response to petitioner's argument that he

had acted in self-defense.

Before the prosecutor's argument, the jury received three relevant instructions. First, the court instructed them to consider and weigh all the evidence. Then, the court instructed them that the counsel's arguments are not evidence and should be disregarded if they are not supported by evidence. Third, the court instructed the jury about self-defense. Case No. 09-CR-212 file: "Jury Instructions" at Instructions Nos. 2, 4, & 8. These instructions properly educated the jury how to weigh the evidence and evaluate the prosecutor's argument. So even if the prosecutor had made a misleading argument, the jury had instructions that correctly presented the legal principles controlling their deliberations. And our Circuit has concluded that juries presumably follow the instructions. *See Bland*, 459 F.3d at 1015 ("The jury is presumed to follow its instructions, even when there has been misleading argument." (citations omitted)).

Defense counsel had an opportunity to rebut the prosecutor's comments in her closing argument and, indeed, she explicitly urged the jury to consider the self-defense instruction. Case No. 09-CR-212 file: Trial Tr. Vol. III, 712–13. Finally, the weight of the evidence supports the jury's finding of guilt. The prosecutor presented evidence of the victim's injuries and eye-witness testimony that provided the jury with evidentiary grounds to find that petitioner punched the victim more than once, while on the ground, thus negating a self-defense defense.

In sum, all of the *Darden* factors—as identified in *Black*—favor the respondent's argument that no prosecutorial misconduct occurred. The court concludes that the Kansas Court of Appeals did not make a finding contrary to clearly established law when it applied the plain error standard. The court dismisses petitioner's fourth ground for relief.

In sum, the court has dismissed all four of plaintiff's grounds for relief. Consequently, it denies the Petition for Writ of Habeas Corpus.

IV.    **Certificate of Appealability**

Rule 11 of the "Rules Governing Section 2254 Cases" requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Without such a certificate, a petitioner may not appeal the denial of his or her habeas petition.  But, "[i]f the court denies a certificate, the [petitioner] may . . . seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rules Governing Section 2254 Cases, Rule 11(a).

Under 28 U.S.C. § 2253(c)(2), the court can issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy this standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or that the issues presented in the petition are "adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983), *superseded in part by* 28 U.S.C. § 2253).  And, when the court bases its ruling on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.* at 478.

Here, the court declines to issue a certificate of appealability.  Nothing suggests that the court's rulings in this case are debatable or incorrect, and no record authority suggests that the Tenth Circuit would resolve this case differently.  In declining to issue the certificate, the court notes that petitioner may not appeal the denial of a certificate but he still may seek a certificate of appealability from the Tenth Circuit.  *See* Rules Governing Section 2254 Cases, Rule 11(a).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Eric P. Joeckel's Petition for Writ of Habeas Corpus (Doc. 1) is denied.  The court also declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

**Dated this 10th day of May, 2018, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**

**Daniel D. Crabtree**
**United States District Judge**